UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
────────────────────────────────

WAYNE R. PICCOLO,

                Plaintiff,

v.                                      **DECISION AND ORDER**
                                                11-CV-406S

WAL-MART,

                Defendant.
────────────────────────────────

## I. INTRODUCTION

Plaintiff Wayne R. Piccolo brings this employment discrimination action pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12112-12117 ("ADA") and New York State Human Rights Law, N.Y. Exec. Law §§ 290-297 ("NYSHRL"). Plaintiff's claims arise out of his employment at Wal-Mart, and Defendant's alleged failure to accommodate his back and leg pain, and its decision to terminate his employment. Presently before this Court is Defendant's motion to dismiss. For the following reasons, Defendant's motion is granted.

## II. BACKGROUND

**A.**     **Facts**

For purposes of Defendant's motion to dismiss, this Court assumes the truth of the following factual allegations. See Sharkey v. Quarantillo, 541 F.3d 75, 83 (2d Cir. 2008); Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton Coll., 128 F.3d 59, 63 (2d Cir. 1997).

Plaintiff began working for Wal-Mart on October 10, 2007 as a temporary seasonal full-time associate / cashier in the electronics department. (Pl.'s Nov. 11, 2010 Letter (Nov. Letter) attached to Compl., p. 1, Docket No. 1.) On December 28, 2007, Plaintiff was laid

1

off, but informed that he was eligible for rehire. (Id.) Plaintiff reapplied to Wal-Mart, and was hired as a full-time cashier on January 10, 2008. (Id.)

While working at Wal-Mart, Plaintiff began experiencing lower back pain, and what he describes as hernia symptoms. These, he believed, came about as a result of lifting and carrying heavy at work. His condition became increasingly severe and, in August of 2008, Plaintiff spoke with store manager Sean Robb about a possible workers' compensation claim. (Id.) Robb and Plaintiff agreed that he would not file such a claim, but would instead request a leave of absence. (Id. at 2.) After Plaintiff's physician filled out the requisite forms, the leave of absence was approved. Plaintiff then had a hernia surgery in March of 2008.[1] He attempted to return to work on September 10, 2008 with a doctor's note clearing him for work, subject to a lifting restriction. (Pl.'s Prelim. Stmt. 2.) Wal-Mart would not permit him to return to work with such a restriction, but approved him for a six-month leave of absence. (Id.)

Plaintiff then returned to work. At some point thereafter he spoke with assistant co-manager Cherry Hodge about being allowed to sit or lean back on a stool while he worked to alleviate lower back and leg pain he was experiencing while standing during his shift as a cashier. (Nov. Letter, p. 2.) He also inquired about the possibility of a transfer. (Id.) Hodge informed Plaintiff that Wal-Mart did not permit seating accommodations for cashiers and that no other positions were available. (Id.)

Plaintiff then requested a second leave of absence from July 7, 2009 to January 7,

---

[1] Although papers attached to his complaint state that Plaintiff had his hernia surgery on August 20, 2008, (Nov. Letter, p. 2), a "Preliminary Statement" filed by Plaintiff on November 28, 2011, states that he had his surgery in March of 2008, (Pl.'s Prelim. Stmt. 1, Docket No. 17). Because Plaintiff alleges that it took him six months to heal from his surgery, it appears that the March 2008 date, with Plaintiff then attempting to return to work in September of that year, is the correct date.

2

2010.  (Id. at 3; Pl.'s Summary of Facts ("Pl.'s Summary") 1, Docket No.19.)  This request was granted, but did not help improve Plaintiff's condition.  (Nov. Letter, p. 3.)  Plaintiff was only able to return to work with a standing and lifting restriction, which Plaintiff had been informed was unavailable.  Consequently, he requested a 6-month extension of his leave of absence.  This was granted, but Plaintiff was warned that if he did not return to work by July 7, 2010, his employment would be terminated for having been on leave for one year.  (Id.)

During his extended leave of absence, Plaintiff's condition improved, and he felt ready to return to work.  Wal-Mart informed him that he would need to see his physician before returning to work.  Plaintiff received a note from his doctor, dated June 19, 2010, which he provided Defendant, stating that he was ready to resume work without restriction.  (Id.)

Plaintiff returned to work on July 6, 2010 as a part-time cashier, the only available open position.  (Id.)  Plaintiff's condition continued to improve over the next two weeks.  (Id. at 4.)  He then asked to be reinstated to full-time status.  He also recorded his work availability as from 7:00 a.m. to 12:00 a.m., to maximize the number of hours Wal-Mart assigned him.  (Id.)

Either at the end of July or the beginning of August, Plaintiff began to relapse.  (Id. at 4-5; Pl.'s Summary 2.)  According to Plaintiff, this was because he "was doing the same work that [he] was doing as a cashier before [he] left."  (Nov. Letter, p. 4.)  He was again required to lift heavy items, and stand throughout his shift.  (Id.)  Plaintiff complained to management that, having just come back from a leave of absence, he should not be required to stand in one spot for extended periods of time.  (Id.)  Plaintiff specifically spoke

3

with manager Darrel Pinney about feeling lower back and leg pain, and that he felt he was having a relapse by standing through his entire shift. (Id. at 5.) As before, Plaintiff asked to be provided a stool to alleviate pressure on his back and legs. (Id.) This request was denied. (Id.) Plaintiff also requested transfer to a department that did not require the same amount of standing in one place. (Id.) This request was approved, but, after interviewing with the manager of the Lancaster Wal-Mart store, Plaintiff was not called in for any position. (Id.)

Plaintiff returned to Pinney and stated that he was quitting as a result of Wal-Mart's refusal to accommodate or transfer him. (Id.)[2] Before doing so, he inquired whether Wal-Mart might approve his request for a stool if he could get a note from his doctor stating that he had developed a relapse after working for three weeks. (Pl.'s Sur-Reply 1.) Wal-Mart responded that any such note would list him as having a work restriction and thus make him ineligible to continue working. (Pl.'s Summary 2.) He was nevertheless told to bring in a form, completed by his physician, showing that he was disabled so that Wal-Mart could pay out the rest of his sick leave and vacation days. (Sur-Reply 3.) As a result, Plaintiff remained technically employed until August 29, 2010, although he was not scheduled for any hours. (Id.)

On August 19, 2010, Plaintiff's physician filled out a note stating that Plaintiff was on "total disability until further notice." (EEOC Mar. 29, 2011 Letter ("EEOC Letter") attached to Compl., p. 1, Docket No. 1.) Plaintiff's physician also filled out another leave

---

[2] It is unclear on what day Plaintiff actually quit. The November letter attached to his complaint implies that he quit around his last day of work, July 29, 2010. (Nov. Letter, p. 5.) His sur-reply, however, states that his last day of "scheduled work" was August 9, 2010. (Pl.'s Sur-Reply 3, Docket No. 23.) His preliminary statement meanwhile maintains that he quit two weeks prior to August 29, 2010. (Pl.'s Prelim. Stmt. 2.) Finally, a letter written by him dated April 4, 2011 lists his last scheduled work day as August 24, 2010. (Pl.'s April 4, 2011 Letter ("Apr. Letter") attached to Pl.'s Summary, p. 1, Docket No. 19.)

4

of absence request form stating that Plaintiff would be incapacitated for a single continuous period lasting two years.

Plaintiff filed a charge of discrimination with the United States Equal Employment Opportunity Commission on November 18, 2010.  (Id.)

### B.     Procedural History

Plaintiff commenced this action on May 11, 2011 by filing a complaint in the United States District Court for the Western District of New York.  (Docket No. 1.)  Along with his complaint, Plaintiff filed a motion for leave to proceed *in forma pauperis* (Docket No. 2), as well as for appointment of counsel, (Docket No. 3).  The Honorable Charles J. Siragusa, United States District Court Judge, granted the first motion, but denied, without prejudice, Plaintiff's motion to appoint counsel.  (Docket No. 4.)

After being granted an extension Wal-Mart responded to the complaint by filing a motion to dismiss on September 12, 2011.  (Docket No. 11.)  After briefing Plaintiff was granted leave to file a sur-reply, which he did on March 16, 2012.  (Docket No. 23.)  Following that filing this Court took Defendant's motion under advisement without oral argument.

### III. DISCUSSION

### A.     Motion to Dismiss Standard

Pursuant to Rule 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted."  Federal pleading standards are generally not stringent: Rule 8 requires only a short and plain statement of a claim. Fed. R. Civ. P. 8(a)(2).  But the plain statement must "possess enough heft to show that the pleader is entitled to relief." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1966, 167 L. Ed. 2d 929

(2007).

When determining whether a complaint states a claim, the court must construe it liberally, accept all factual allegations as true, and draw all reasonable inferences in the plaintiff's favor. ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007). Legal conclusions, however, are not afforded the same presumption of truthfulness. See Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 129 S. Ct. at 1945 (quoting Twombly, 550 U.S. at 570). Labels, conclusions, or a "formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Facial plausibility exists when the facts alleged allow for a reasonable inference that the defendant is liable for the misconduct charged. Iqbal, 129 S. Ct. at 1949. The plausibility standard is not, however, a probability requirement: the pleading must show, not merely allege, that the pleader is entitled to relief. Id. at 1950; Fed. R. Civ. P. 8(a)(2). Well-pleaded allegations must nudge the claim "across the line from conceivable to plausible." Twombly, 550 U.S. at 570.

Courts therefore use a two-pronged approach to examine the sufficiency of a complaint, which includes "any documents that are either incorporated into the complaint by reference or attached to the complaint as exhibits." Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004). This examination is context specific and requires that the court draw on its judicial experience

and common sense. Iqbal, 129 S. Ct. at 1950. First, statements that are not entitled to the presumption of truth – such as conclusory allegations, labels, and legal conclusions – are identified and stripped away. Id. Second, well-pleaded, non-conclusory factual allegations are presumed true and examined to determine whether they "plausibly give rise to an entitlement to relief." Id.

### B.  Plaintiff's Failure to Accommodate Claims

Plaintiff alleges that he was denied accommodation requests on three separate occasions. First, on September 10, 2008, when Plaintiff sought to return to work with a lifting restriction following his hernia surgery. (Pl.'s Summary 1.) Second, in June of 2009, when Plaintiff was first experiencing back and leg pain and asked to be allowed to sit on a stool or lean on his register. (Pl.'s Sur-Reply 2.) And, third, after having returned to work for about a month following a one-year leave of absence when he again requested a seating accommodation. (Pl.'s Prelim. Stmt. 2.)

#### 1.  First and Second Denials of Accommodation

In raising a claim under the ADA, a charge of discrimination must first be filed with the EEOC within 300 days of the alleged discrimination. 42 U.S.C. § 12117(a); Valtchev v. City of New York, 400 F. App'x 585, 588 (2d Cir. 2010) (summary order); Harris v. City of New York, 186 F.3d 243, 247 n. 2 (2d Cir. 1999). Here, Plaintiff's EEOC charge was not filed until November 18, 2010. Consequently, any claims of discrimination must have occurred between January 22, 2010 and the date of his EEOC filing, or else be time-barred. Both his first and second accommodation requests, made on September 10, 2008 and June of 2009, respectively, fall outside this time frame and are thus untimely.

However, cognizant of the distinct disadvantage that *pro se* litigants face, this Court

has read Plaintiff's submissions carefully and liberally, and has interpreted them to raise the strongest arguments they suggest. See Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972); Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994). Although Plaintiff does not explicitly refer to it, his pleadings allege that Wal-Mart not only denied him an accommodation, but actually had a policy in place that made denying all such requests standard practice, and so this Court has considered whether Plaintiff's claims could be saved under the continuing violation doctrine.

"[A] continuing violation may be found where there is proof of specific ongoing discriminatory policies or practices, or where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." Cornwell v. Robinson, 23 F.3d 694, 706 (2d Cir. 1994). Such a finding should only be made on compelling circumstances, as the continuing violation doctrine is disfavored in this circuit. See Blesedell v. Mobil Oil Co., 708 F. Supp. 1408, 1415 (S.D.N.Y. 1989) (citing LaBeach v. Nestle Co., 658 F. Supp. 676, 687 (S.D.N.Y. 1987)); see also Samimy v. Cornell Univ., 961 F. Supp. 489, 493 (W.D.N.Y. 1997) (citing cases).

Plaintiff's discrimination claim is based on the fact that "Wal-mart does not accommodate their employees with temporary or permanent disabilities." (Nov. Letter, p. 2.) Plaintiff has stated that anytime he requested an accommodation, he was told that Wal-Mart prohibited employees from working with restrictions. (Pl.'s Prelim. Stmt. 3.) This was regardless of whether an employee could present medical evidence in support of his restriction. (Id. at 2-3.) Plaintiff has further alleged that, in his experience, employees who developed a disability or were injured would be sent home or told to request a leave of absence, rather than be offered some accommodation. (Pl.'s Sur-Reply 3.) Indeed,

8

Plaintiff states that only recently, since approximately October of 2011, have store greeters been allowed to sit throughout their work shift. (Id.) Read broadly, this allegation pleads the type of policy necessary for application of the continuing violation doctrine.

Wal-Mart, in its reply, points to the fact that it has an "Accommodation in Employment – (Medical-Related) Policy" which provides for procedures accommodating employees with disabilities. But that fact is irrelevant at this stage. (Def.'s Reply 6 n. 3, Docket No. 18.) Whatever Wal-Mart's official policy, Plaintiff has specifically alleged that the assistant co-manager, Cherry Hodge, told him that Wal-Mart's rules did not allow for seating accommodations. (Nov. Letter 2.) When Plaintiff spoke with his manager, Darrel Pinney, about a possible accommodation he was, again, denied on the basis of Wal-Mart's rules. (Nov. Letter 5.) Thus, whether Wal-Mart had an official policy in place or not, Plaintiff has sufficiently alleged that Wal-Mart had a *de facto* rule that would not allow any individual with a working restriction to perform their job.

Nevertheless, adequately pleading a policy or practice is only a necessary, not a sufficient, condition. Plaintiff must also show that there is "an act that occurs within 300 days of an EEOC charge [that] may implicate–and therefore make timely–incidents otherwise outside the mandatory filing deadlines." Miller v. N.Y.C. Health & Hosp. Corp.. No. 00 Civ. 140, 2004 WL 1907310, at *3 (S.D.N.Y. Aug. 25, 2004) (citing Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114-21, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002)). The only incident that might qualify, other than Plaintiff's discriminatory termination claim, which will be addressed separately, is Defendant's failure to accommodate his seating request in August of 2010.

### 2. Third Denial of Accommodation

Plaintiff returned to work on July 6, 2010 and provided Wal-Mart with a note stating he was eligible to return to work without restrictions. Working as a part-time cashier, Plaintiff's condition continued to improve, to the point where he requested that his hours be extended. At the beginning of August, roughly one month after Plaintiff returned to work, his back and leg pain returned. He requested permission to sit on a stool or lean on his register. That request was denied. When Plaintiff asked whether he could bring a doctor's note stating that he required a stool to continue working, he was informed that pursuant to Wal-Mart's policy, employees were not allowed to work with restrictions. He was also informed that in order to get vacation and sick leave time owed to him, he would need to bring in a doctor's note showing that he could not perform his required job duties. It appears that Plaintiff did so.

What is less clear is what exactly he gave Wal-Mart. Plaintiff states that Wal-Mart provided him with a medical form for his doctor to complete. (Pl.'s Prelim. Stmt. 3.) This suggests Plaintiff is referring to the "Certification of Health Care Provider for Associate's Serious Health Condition" form, attached, in part, to his complaint, (Med. Cert. attached to Compl., Docket No. 1) and also separately, again in part, as an exhibit, (Docket No. 20).[3] Those pages attached to the complaint include three nearly identical pages, signed by Plaintiff's physician, and numbered 8, 8, and 10 (renumbered by this Court as 8.1, 8.2, and 10 for clarity). The first of these states that Plaintiff would be incapacitated for a single continuous period because of his medical condition, from August 19, 2010 to August 19,

---

[3] In responding to Defendant's motion, Plaintiff filed over 90 pages of medical records. (Docket No. 20.) The majority of these refer to treatment he received after the events in question, and do not add any information necessary to resolving this case.

2012.  (Med. Cert., p. 8.1.)  The second adds, under an "additional information" section, that the certificate was a medical leave of absence form.  (Id. at 8.2)  It also adds that his condition would cause periodic flare-ups, but that these would not require him to be absent from work.  (Id.)  The third page, contradicting the previous two, states that Plaintiff would not be incapacitated for a single continuous period of time.  (Id. at 10.)  All these are dated August 20, 2010, although the date on page ten includes the notation "Correct Date Signed" and could be interpreted as either August 20 or August 28, 2010.  (Id.)

Adding to the confusion is the fact that according to the EEOC letter Plaintiff received, and attached to his complaint, his physician placed him on "total disability until further notice" on August 19, 2010.  (EEOC Letter, p.1.)  Defendant, unsurprisingly, relies heavily on this statement, and includes a copy of the original note, written on a New York State prescription slip, as an exhibit.  (Cert. of Michael S. Hanan, Esq., Ex. C, Docket No. 11-5.)

It is not necessary to dwell on these documents, however, because Plaintiff's description of them is wholly out of line with their plain meaning.  In a letter dated April 4, 2011, Plaintiff states that the records attached to his complaint do not state that he is totally disabled, but only that he has a work restriction.  (Apr. Letter, p. 1.)  Plaintiff argues that the part of the form that asked whether he would "be incapacitated for a single continuous period of time due to his/her medical condition" (Med. Cert. 8.1, 8.2), should actually be read to state that he might possibly require days off from work for follow-up appointments and treatment, (Apr. Letter, p. 1).  Aside from being incongruous with the meaning of the words themselves, Plaintiff's interpretation is also at odds with the purpose of the form itself, namely to request a leave of absence.  (Med. Cert., p. 7.)  Specifically, the form asks

11

that physicians limit responses "to the condition for which the associate is seeking leave." (Id.) Plaintiff's description is also at odds with the physician's assessment that he was suffering from a "total disability." (EEOC Letter, p. 1.) Tellingly, Plaintiff does not challenge the authenticity of this note, or otherwise allege that his physician was being less than truthful about Plaintiff's medical condition.

Having clarified the medical evidence available, this Court can now consider Plaintiff's request for accommodation, which took place shortly before Plaintiff quit his employment. Regardless of whether Plaintiff requested an accommodation before submitting the aforementioned medical documents, or after, the result remains the same.

To state a *prima facie* failure to accommodate claim, a plaintiff must establish that "(1) h[is] employer was subject to the ADA; (2) []he was disabled; (3) []he was otherwise qualified to perform the essential functions of the job; and (4) defendant had notice of the disability and failed to provide such reasonable accommodations." Johnson v. Maynard, No. 01-CV-7393, 2003 WL 548754, at *6 (S.D.N.Y. Feb. 25, 2003) (citing Lyons v. Legal Aid Soc'y, 68 F.3d 1512, 1515 (2d Cir. 1995)).[4] Although a "plaintiff need not plead 'specific facts establishing a prima facie case of discrimination' in violation of the ADA to survive a motion to dismiss" he must nevertheless provide a short plain statement showing that he is entitled to relief. Starr v. Time Warner, Inc., No. 07 Civ. 5871(DC), 2007 WL 4144627, at *4 (S.D.N.Y. Nov. 21, 2007) (citation omitted) (dismissing ADA claim where plaintiff failed to plead that she was qualified to perform essential functions of job or that

---

[4]Plaintiff also brings claims under NYSHRL. The standard under which such claims are analyzed is the same as that for claims arising under the ADA. See Graves v. Finch Pruyn & Co., 457 F.3d 181, 184 n. 3 (2d Cir. 2006); see also Crawford-Bey v. N.Y. & Presbyterian Hosp., No. 08-cv-5454, 2011 WL 453, at *5 n. 6 (S.D.N.Y. Sept. 30, 2011) ("[Disability-base discrimination claim[s] under the NYSHRL . . . involve the 'same elements' as an ADA claim.").

she suffered disability-related adverse employment action).

Here, Plaintiff has not sufficiently alleged that Defendant was on notice of his disability. As a threshold matter, the circumstances and documentation required to support a claimed disability varies by case. See Abdo v. Univ. of Vt., 263 F. Supp. 2d 772, 778 (D. Vt. 2003) (citing cases and noting "how context dependant the documentation requirements are across the body of ADA cases"). Nevertheless, "an employer's knowledge of a plaintiff's symptoms does not establish, as a matter of law, that it knew the plaintiff was disabled." Cozzi v. Great Neck Union Free Sc. Dist., No. 05 Civ. 1389(ENV), 2009 WL 2602462, at *14 (E.D.N.Y. Aug. 21, 2009); Brown v. Connecticut, No. 3:08cv1478 (MRK), 2010 WL 2220580, at *17 (D. Conn. May 27, 2010) (well-established in ADA context that employer's knowledge of employee's limitations or symptoms does not provide proof that employer knew condition or symptoms were disabling). Nor is it necessarily sufficient for the employer to know that a plaintiff suffers from a medical condition. See Moore v. Time Warner GRC 9, 18 F. Supp. 2d 257, 262 (W.D.N.Y. 1998) (knowledge that employee suffered from diabetes or hypertension and phone calls on each absence not enough for employer to know conditions were disabling); Kolivas v. Credit Agricole, No. 95 Civ. 5662 (DLC), 1996 WL 684167, at *5 (S.D.N.Y. Nov. 26, 1996) (knowledge that plaintiff had seen psychiatrist, was on prescription medication, was depressed, and needed week off from work insufficient to show defendant knew of plaintiff's disability); but see Johnston v. Carnegie Corp., No. 10 Civ. 1681(PAC)(DF), 2011 WL 1118662, at *4 (S.D.N.Y. Mar. 23, 2011) (disclosing condition to defendant multiple times and making anecdotal disclosures to co-workers referencing therapy, medication, and history of mental illness sufficient to put defendant on notice that plaintiff was mentally disabled).

Similarly, the mere fact that a Plaintiff requests an accommodation, may not be enough to put Defendant on notice. Bresloff-Hernandez v. Horn, No. 05 Civ. 0384(JGK), 2007 WL 2789500, at *9 (S.D.N.Y. Sept. 25, 2007) (typed memo not in compliance with formal procedure for requesting disability accommodation insufficient to put defendant on notice). Instead, "the ADA requires those claiming the Act's protection . . . to prove a disability by offering evidence that the extent of the limitation [caused by their impairment] in terms of their own experience . . . is substantial." Toyota Motor Mfg. v. Ky., Inc., 534 U.S. 184, 198, 122 S. Ct. 681, 151 L. Ed. 2d 615 (2002). "Merely submit[ting] evidence of a medical diagnosis of an impairment' is 'insufficient . . . to prove [a] disability.'" Peterec-Tolino v. Commercial Elec. Contractors, Inc., No. 08 Civ. 0891(RMB), 2011 WL 5105474, at *6 (S.D.N.Y. Oct. 26, 2011) (quoting Toyota Motor Mfg. v. Ky., Inc., 534 U.S. 184, 198, 122 S. Ct. 681, 151 L. Ed. 2d 615 (2002)) (alterations in original).

In the present case, Plaintiff only informed Defendant that he was experiencing back and leg pain. This was not enough for Defendant to believe Plaintiff was disabled. Nor was Defendant required to accept Plaintiff's representation that he was suffering a relapse from the condition which had necessitated a 12-month leave of absence. See Brown v. The Pension Bds., 488 F. Supp. 2d 395, 406 (S.D.N.Y. 2007) (physician's note which failed to mention mental condition did not constitute notice of disabling mental condition, despite plaintiff's mother commenting that plaintiff was suffering a breakdown). Plaintiff had only been back on the job for about a month. At that time, he submitted a note from his physician which stated that he had no work restrictions. He also requested additional hours only two weeks before he again began experiencing pain. Defendant was not required to accept that Plaintiff was disabled when it was Plaintiff who, far from slowing

down, was speeding up and exerting himself to work more hours.

It also appears that Plaintiff did not present Defendant with any medical paperwork explaining what his disability was, or what work restrictions that disability imposed. See Peterec-Tolino, 2011 WL 5105474, at *6 (failure to provide medical documentation undermined claim that condition substantially limited plaintiff). What medical evidence there is actually shows that Plaintiff suffered from a "total disability" (Def.'s Ex. C), or required a two year leave of absence (Med. Cert. at 8.1, 8.2). Thus, assuming that Plaintiff had provided Wal-Mart with medical evidence of his condition, that evidence would have simply excluded him from the position entirely. See Dietrich v. E.I. Du Pont de Nemours & Co., No. 02-CV-678S, 2004 WL 2202656, at *13 n. 15 (W.D.N.Y. Sept. 28, 2004) ("Plaintiff has simply failed to set forth any medical evidence from which it could reasonably be concluded that he could return to work if Defendant had granted the accommodation that he requested.").[5]

Having failed to plead facts demonstrating that he gave Defendant adequate notice of his disability, Plaintiff's third accommodation claim must fail. Because it fails, and because it was the only timely claim, his first and second accommodation claims cannot come under the continuing violation doctrine and must also fail.[6] Accordingly, Defendant's

---

[5]Plaintiff variously implies that Defendant coerced him into submitting medical paperwork to the effect that he was totally disabled, while also arguing that his medical records should be read to mean that he could still work, if provided a sitting accommodation. There is no allegation, however, that Plaintiff's physician falsified or otherwise misrepresented Plaintiff's medical condition. As already discussed, Plaintiff's condition left him disabled and in need of a leave of absence which, because he had already had a 12-month leave of absence, would result in his termination. This Court also notes that Plaintiff was scheduled to have a second hernia operation on November 18, 2010, the same procedure for which he had been granted a leave of absence in 2008. Thus, even assuming that Plaintiff was discouraged from seeking a physician's note delineating under what restrictions he could continue working, the note would ultimately have been of no assistance.

[6]Although this Court has not discussed it, it also appears that Plaintiff's second accommodation request, which was also for a seating accommodation, was not supported by medical evidence.

motion to dismiss Plaintiff's failure to accommodate claims will be granted.

**C.     Plaintiff's Wrongful Termination Claim**

Plaintiff also complains that Defendant terminated his employment. It is undisputed that Plaintiff was not fired from his position, but that he quit. Nevertheless, Plaintiff argues that Defendant forced him to quit because the pain of continuing without some accommodation was too great.

To establish a *prima facie* case of wrongful termination under the ADA, a plaintiff must show, in addition to the elements already discussed, that "[]he was fired because of h[is] disability." Ryan v. Grae & Rybicki, P.C., 135 F.3d 867, 869-70 (2d Cir. 1998). Plaintiff states, unequivocally, that he was not fired; he quit. Even understanding his complaint to argue that, in not accommodating him, Wal-Mart effectively terminated him, this claim must nevertheless be dismissed.

"[N]otice to the employer of the claimed disability is an essential element of a wrongful termination case under the ADA." Watson v. Arts & Entm't Television Network, No. 04 Civ. 1932, 2008 WL 793596, at *10 (S.D.N.Y. Mar. 26, 2008) (citing Raytheon v. Hernandez, 540 U.S. 44, 55 n. 7 (2003)); Masters v. F.W. Webb. Co., No. 03-CV-6280L, 2008 WL 4181724, at *9 (W.D.N.Y. Sept. 8, 2008) ("Because plaintiff must show that 'he suffered an adverse employment action *because of* his disability,' he must also show that [defendant] was *aware* of his disability." (citation omitted, emphasis in original)). As already discussed, Plaintiff did not sufficiently put Wal-Mart on notice of his disability. As with his failure to accommodate claim, this proves fatal to his wrongful termination claim.

Further, having understood the medical evidence presented by Plaintiff to show him disabled from continuing in his position, at most, two weeks after Plaintiff declared his

intention to quit, Defendant was within its right to end his employment. A plaintiff bears the burden of showing that he was qualified for the job in question. Borkowski v. Valley Cent. Sch. Dist., 63 F.3d 131, 137-38 (2d Cir. 1995). And where an individual is totally disabled, with or without accommodation, an individual cannot be found "otherwise qualified" under the ADA, and termination of his employment will not result in an ADA violation. Bohen v. Potter, No. 04-CV-1039S, 2009 WL 791356, at *9 (W.D.N.Y. Mar. 23, 2009) (listing cases). The medical evidence in this case does not support Plaintiff's contention that he could continue working. His physician both labeled him as totally disabled and completed a leave of absence request form to the effect that Plaintiff would be incapacitated for a period of two years.

Even if this Court were to interpret Plaintiff's complaint as requesting an accommodation in the form of an additional leave of absence for the period from August 19, 2010 to August 19, 2012, as a matter of law, such a request is unreasonable. See Starr, 2007 WL 4144627, at *4 ("As a matter of law, a two-year leave is too long an absence from work to be reasonable. Plaintiff, therefore, has not sufficiently pled that she was qualified to perform her job . . . .").

Plaintiff's wrongful termination claim will be dismissed.

**D.     Plaintiff's Hostile Work Environment Claim**

Although it is only briefly mentioned, Plaintiff also alleges that a Wal-Mart store manager evidenced hostility towards him when he became aware of Plaintiff's intention to file a workers' compensation claim in August of 2008. Because this claim is outside the EEOC's 300-day filing deadline it is time-barred and will not be considered further.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is granted.

## V.  ORDERS

IT HEREBY IS ORDERED, that Defendant's Motion to Dismiss (Docket No. 11) is GRANTED.

FURTHER, that it is hereby certified, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person.  See Coppedge v. United States, 369 U.S. 438, 82 S. Ct. 917, 8 L. Ed. 2d 21 (1962).

FURTHER, that the Clerk of the Court shall close this case.

SO ORDERED.


Dated:      May 30,  2012
            Buffalo, New York

                                          /s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                             Chief Judge
                                        United States District Court